# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**RAVISANKAR YARABOTHU,**

  **Plaintiff,**

**v.**                  Case No: 6:17-cv-1601-Orl-31DCI

**MEGAN BRENNAN,**

  **Defendant.**

## ORDER

This Matter comes before the Court without a hearing on the Defendant's Motion for Summary Judgment (Doc. 24), the Plaintiff's Response (Doc. 64), and the Defendant's Reply (Doc. 65).

**I. Background**

The Plaintiff filed a complaint alleging age discrimination based on a hostile work environment and retaliation under the Age Discrimination in Employment Act. The underlying evidence in this case is confusing and complicated, but the background necessary to evaluate the Motion for Summary Judgment is simple. Yarabothu worked for the United States Postal Services. While employed there, some of his supervisors treated him poorly. He was criticized, perhaps unfairly, but not disciplined, for poor productivity, cell phone use, taking extended breaks, and tardiness. He testified that a supervisor called him an old man about four times per month. His testimony also indicates that he did not always receive the overtime hours that he believed he should have received. After making informal Equal Employment Opportunity complaints, he filed the instant suit. The Defendant did not file a Motion to Dismiss, but now moves for summary judgment.

## II. Legal Standards

### A. Summary Judgment

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). A court "must draw all reasonable inferences in favor of the non-moving party, and it may not make credibility determinations or weigh the evidence." *Hinson v. Clinch County, Ga. Bd. Of Educ.*, 231 F.3d 821, 826-27 (11th Cir. 2000) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000)).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the nonmoving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value"). The Court must consider all inferences drawn from the underlying facts in the light most favorable to the party

opposing the motion and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255.

### B. Age Discrimination in Employment Act

#### 1. Hostile Work Environment

The Eleventh Circuit has assumed, without deciding, that hostile work environment claims can be brought under the ADEA. *Coles v. Post Master Gen. United States Postal Servs.*, 711 F. App'x 890, 898 (11th Cir. 2017). To establish a hostile work environment claim, an employee must prove that the workplace "is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). A plaintiff bringing such a claim must show (1) he is at least forty years old; (2) he "was subjected to harassment, either through words or actions, based on age;" (3) the harassment unreasonably interfered with his work performance and created "an objectively intimidating, hostile, or offensive work environment;" and (4) there "exists some basis for liability on the part of the employer." *Coles,* 711 F. App'x at 898 (quoting *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834-35 (6th Cir. 1996)) (internal quotations omitted).

In evaluating the objective severity of the harassment, courts within this Circuit must consider, among other factors: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002) (citing *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997)).

### 2. Retaliation

The *McDonnell Douglas* burden-shifting analysis applies in cases of retaliation relying on circumstantial evidence. *Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009). To establish a prima facie case for retaliation, a plaintiff must show that "(1) he engaged in statutorily protected activity, (2) he suffered a materially adverse action, and (3) there is a causal relationship between the two." *Schiele v. S. E. Showclubs, LLC*, No. 8:16cv-02308–JSM–MAP, 2017 WL 2834779, at *2 (M.D. Fla. June 30, 2017) (citing *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010)).

> Once a plaintiff establishes a prima facie case of retaliation, the burden of production shifts to the defendant to rebut the presumption by articulating a legitimate, non-discriminatory reason for the adverse employment action. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted and drops from the case. After the defendant makes this showing, the plaintiff has a full and fair opportunity to demonstrate that the defendant's proffered reason was merely a pretext to mask discriminatory actions.

*Bryant* at 1307–08 (internal citations and quotation marks omitted).

### III. Analysis

Both parties have submitted depositions and other evidence amounting to thousands of pages. The Court has reviewed all of the evidence submitted by the parties. The depositions make clear that Plaintiff's counsel left no stone unturned in his hunt for evidence that Yarabothu was the victim of unlawful age discrimination.[1]

Plaintiff had numerous supervisors that he worked under on a regular basis. Those supervisors and the postal workers' Union both had a great deal of involvement in the controversies Yarabothu found himself entangled in over the past six years: disputes over cell phone usage,

---

[1] The Court notes that Plaintiff's counsel went to extreme lengths to interrogate various USPS employees during depositions, including calling witnesses liars and threatening them with contempt and perjury charges. The Court admonishes Plaintiff's counsel to act more professionally in the future.

allegations of overly long and too frequent bathroom breaks, and the unforgettable incident in which Yarabothu sipped a potentially unauthorized juice box while in the workroom, waiting for a new batch of mail to handle. However, it appears that, despite being criticized by his many supervisors, Yarabothu never received any form of discipline, save a written warning of some sort in 2013. In the depositions, Plaintiff's counsel repeatedly implies that other employees were treated better by asking questions about the regulation of bathroom and water breaks and cell phone usage. Additionally, Yarabothu testified that he was called an old man by his manager. Local Union President Ben Martin's deposition supports Yarabothu's testimony. And the deposition testimony of several employees—including the managers themselves—leaves little doubt that the work environment was unpleasant.

The Plaintiff's Response is difficult to understand. It includes paragraphs as long as seven pages and lengthy, confusing sentences. The headings shed no light on what the sections below them discuss. For example, one section is entitled "Applicable Law for a Hostile Work Environment Claim." Doc. 64 at 11. This section goes from pages 11 to 30, appears to be the Plaintiff's analysis section, and contains only four paragraphs. The only other sections are "Response to Undisputed Facts" and the conclusion. In order to ensure it draws all possible inferences in favor of the Plaintiff, the Court will evaluate the Plaintiff's arguments and citations to evidence in turn.

After discussing some case law related to hostile work environment claims, the "Applicable Law for a Hostile Work Environment Claim" section attempts to address the retaliation claim. Doc. 64 at 13. It appears that the statutorily protected activity that the Plaintiff engaged in was the filing of an informal EEO complaint in June of 2017. Doc. 64 at 15. According to Plaintiff's testimony, he was improperly denied overtime once a month throughout 2017. Doc. 24-1 at 48. Denial of overtime can certainly constitute a materially adverse action, under the right circumstances. But

there is no basis for determining that the denial of overtime was retaliation for the filing of the informal EEO complaint when the Plaintiff acknowledges that overtime was denied with the same regularity prior to the filing of that complaint. Although the Court is not obligated to "hunt[] for truffles buried in briefs," a diligent search of the Response reveals no other statutorily protected activity for which Plaintiff was retaliated against. *See Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008) (internal quotation marks omitted) (quoting *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003)).

The rest of the Response appears to be related to the hostile work environment claim rather than retaliation. The Response makes much of Vindy Lasher's (formerly Lopez; one of Yarabothu's many supervisors) testimony, claiming that her responses to Plaintiff's counsel's questions somehow admit that she was discriminating against Yarabothu based on his age. The Court has reviewed her testimony and finds no such admission. What is clear from the deposition is that the Plaintiff's counsel asked extraordinarily confusing questions. The Response does not clarify those questions in any way; instead, it cherry-picks random questions and responses and lays them out in a stream-of-consciousness style, often confusing Plaintiff's counsel's questions with Lasher's answers. If Lasher did "advise[] Plaintiff [that denial of overtime] was due to Yarabothu's old age and having engaged in clearly protected expression," as the Response claims, the word salad of both Plaintiff's counsel's questions and Response prevents the Court from verifying the same.

After its examination of Lasher's testimony, the Response briefly turns its attention to the testimony of Britt Hayes. Hayes is a mail handler who worked with Yarabothu. His testimony amounts to evidence that Yarabothu may have been unfairly criticized for production deficiencies and that the supervisors were rude and untruthful. The Response never even mentions age discrimination in its discussion of Hayes's testimony.

Next, the Response addresses the testimony of Lawrence Leighton, another mail handler who worked with Yarabothu. Leighton's testimony does discuss age. In response to loaded, awkwardly worded questions,[2] Leighton speculates that it is possible supervisors might criticize the production of older employees in order to "get them out of the system, for new people or whatever." Doc. 24-2 at 82.[3] Leighton also testifies that, when supervisors said that Yarabothu's production was slow, they must have done so based on his age, because if the supervisor was at the podium on the workroom floor, they would not be able to see what Yarabothu was doing at his station. Doc. 24-2 at 86. Leighton's testimony does not constitute evidence of a hostile work environment claim based on age discrimination.

The Response discusses other depositions as well, but none of that discussion points toward any evidence in support of either the hostile work environment or retaliation claims. There is evidence the Yarabothu was yelled at, scolded in front of his peers, and possibly subjected to unreasonable productivity demands. However, no one gave testimony or provided evidence from which a reasonable jury could conclude that he was subjected to a hostile work environment *based on his age*, or that he was the victim of retaliation for engaging in statutorily protected activity.

## IV.  Conclusion

For the foregoing reasons, the Defendant's Motion for Summary Judgment (Doc. 24) is **GRANTED.** The clerk is **DIRECTED** to enter judgment in favor of the Defendant.

---

[2] Such as "Do you think it's a fair-minded way to get at somebody who is older, to use that as an excuse, to criticize the lack of production; do you think that's fair?" Doc. 24-2 at 82.

[3] Although it is unclear why, Leighton seems to believe that "social security" is involved in this or in a similar effort. *Id.*

**DONE** and **ORDERED** in Chambers, Orlando, Florida on May 13, 2019.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party